**VALENTI LAW APC**
Matthew D. Valenti (SBN 253978)
E-mail: mattvalenti@valentilawapc.com
5252 Balboa Avenue, Suite 700
San Diego, California 92117
Phone: (619) 540-2189

Attorney for Ron Sarfaty

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON SARFATY,<br><br>        Plaintiff,<br><br> vs.<br><br>CANOGA HOTEL CORPORATION;<br>DOUGLAS EMMETT REALTY FUND<br>2002, LLC; and DOES 1-10,<br><br>        Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>DENIAL OF CIVIL RIGHTS AND ACCESS TO PUBLIC FACILITIES TO PHYSICALLY DISABLED PERSONS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, (42 U.S.C. §12101, *et seq.*) AND THE UNRUH CIVIL RIGHTS ACT, (CALIFORNIA CIVIL CODE §51, *et seq.*)<br><br><u>DEMAND FOR JURY TRIAL</u> |

*"[T]he continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."* 42 U.S.C. §12101(a)(8).

*"It is the policy of this state to encourage and enable individuals with a disability to participate fully in the social and economic life of the state ..."* California Government Code §19230(a).

Plaintiff RON SARFATY (hereinafter referred to as "Plaintiff") complains of CANOGA HOTEL CORPORATION; DOUGLAS EMMETT REALTY FUND 2002, LLC; and DOES 1-10, (each, individually a "Defendant" and collectively "Defendants") and alleges as follows:

## I.    PARTIES

1.    Plaintiff RON SARFATY is a California resident and a qualified, permanently physically disabled person. He is a stroke survivor and suffers from degenerative spinal disc disease. He has a limited ability to walk and uses a wheelchair for mobility. He drives a van specially adapted for him to drive independently and exits his vehicle from the back. His vehicle needs to open completely in the back to allow him to transfer in and out of his vehicle.  Plaintiff prides himself on his independence and on empowering and advocating for other disabled persons to be independent.

2.    Defendants CANOGA HOTEL CORPORATION, a California corporation doing business as HILTON WOODLAND HILLS; DOUGLAS EMMETT REALTY FUND 2002, LLC, a Delaware limited liability company; and DOES 1-10, are and were the owners, operators, lessors and/or lessees of the subject business, property, and facility at all times relevant in this Complaint.

3.    Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and

alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including DOES 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

4.      Defendants own and owned the property located at 6360 Canoga Ave, Woodland Hills, CA 91367 ("Subject Property") at all relevant times.

5.      Defendants operate and operated a hotel doing business as HILTON WOODLAND HILLS ("hotel"), located at the Subject Property, at all relevant times.

6.      Plaintiff alleges that the Defendants have been and are the owners, franchisees, lessees, general partners, limited partners, agents, trustees, employees, subsidiaries, partner companies and/or joint ventures of each of the other Defendants, and performed all acts and omissions stated herein within the course and scope of such relationships causing the damages complained of herein.

## II.      JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (a)(4) for violations of the Americans with Disabilities Act of 1990, U.S.C. §12101, *et seq*.

8.      Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising out of the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which expressly incorporates the Americans with Disabilities Act.

9.      Venue is proper in this court pursuant to 28 U.S.C. U.S.C. §1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

## III.      FACTS

10. Plaintiff uses a wheelchair for mobility.

11. Defendants' business is open to the public, a place of public accommodation, and a business establishment.

12. Plaintiff is a customer of the Hilton Hotel. Plaintiff went to the hotel multiple times per day from March 9, 2024, to March 14, 2025. He paid for a few family members to stay at the hotel for a family visit. He also went to the hotel twice daily, and on a couple of days he was there more often, while his family was staying at the hotel. He would come to pick them up and drop them off, generally two to three times each day of their stay.

13. Unfortunately, Plaintiff's equal access to the hotel was denied in several ways. Defendants offer no accessible means of parking, nor do they offer an accessible transaction counter for checking in and paying the bill. Plaintiff personally experienced frustration and difficulty due to these barriers, as detailed herein.

14. During Plaintiff's visits, Defendants did not offer persons with disabilities equivalent facilities, privileges, advantages, and accommodations offered to other persons.

15. Plaintiff encountered barriers that interfered with and denied Plaintiff the ability to use and enjoy the goods, services, privileges, advantages, and accommodations offered by Defendants at the Subject Property.

16. These barriers violate one or more standards of the Americans with Disabilities Act ("2010 ADA") and/or the California Building Codes ("2022 CBC").

17. Parking for patrons visiting the Subject Property is among the facilities, privileges, advantages, and accommodations offered by Defendants.

18. According to the U.S. Department of Justice, "a public accommodation's first priority should be to enable individuals with disabilities to physically enter its facility. This priority on 'getting through the door' recognizes

that providing physical access to a facility from public sidewalks, public transportation, or parking is generally preferable to any alternative arrangements in terms of both business efficiency and the dignity of individuals with disabilities." ADA Title III Technical Assistance Manual §III-4.4500.

19.    When parking is provided, there must be at least one accessible parking space designated and marked for disabled persons. Where more than one parking facility is provided on a site, the number of accessible spaces provided on the site shall be calculated according to the number of spaces required for each parking facility. 2010 ADA §502 et seq.; 2010 ADA §208.2; 2022 CBC 11B-502 et seq; 2022 CBC 11B-208.2.

20.    However, there is no accessible parking for disabled persons at the Subject Property because there are insufficient accessible parking spaces designated for disabled persons and/or the existing ostensibly designated space or spaces are significantly noncompliant with the applicable ADA and CBC standards.

21.    Since there is no disabled parking available near the entrance, and the parking garage is valet only, he parked at the green curb area to pick up and drop off his family members and to pay the bill. This area allows a 10-minute limit for check-ins only.

22.    On his first and second visits, Plaintiff was told by a valet that he must hand over his keys and utilize the mandatory valet parking. Plaintiff declined to give the valet his keys because his vehicle is specially adapted for him with hand controls and he knew the valets are not trained how to operate the vehicle safely. Plaintiff parked his car in the green zone. The valet told him he was not allowed to park in the green zone. However, under California law, a disabled person can park by a green curb for an unlimited length of time. VEH §22511.5.

23.    There is no access from the green curb to the hotel. There is an accessible entry sign above green curb which points to a ramp. The sign at the

ramp says "Handicap Access" and "Do Not Block Ramp." However, the ramp is often reduced to 16" clear width due to being blocked by luggage carts. Accessible routes must have a minimum width of 36 inches.  2010 ADA §403.5.1; 2022 CBC 11-B 403.5.

24.    This "Hadicap Access" sign sums up the problem at this hotel. This outdated term is degrading to the disabled community and should be updated right along with the hotel's architectural barriers.

25.    The hotel also has a parking garage available. However parking is restricted to "Valet personnel only" and there are multiple "NO PARKING" signs in this area of the garage. This area has a proper accessible height marked as 8' 2".

26.    However, "Hotel Parking" is directed to an entry with signs restricting height to 7' 7". When asked if there were any disabled parking spaces available in the accessible portion of the garage, the valet worker onsite confirmed there are no disabled parking spots available with a clearance above 7' 7". This disallows vehicles to open the hatchback area fully. Plaintiff enters and exits from his vehicle through the back, and would be unable to do so if he parked in this inaccessible part of the parking garage. This renders the parking garage fully inaccessible and useless to Plaintiff.

27.    There is no ADA compliant parking signage. The signs are located a mere 22 inches above grade making it difficult if not impossible to see the signage from the driver's seat. There is no "FINE" sign on or with stall signs. ADA 2010 §502.6; 2022 CBC 11B-502.6, 2022 CBC 11B-703.7.2.1.

28.    The "No Parking" paint is completely missing in the access aisles. ADA 2010 §502.3.3; ADA 2010 §502.6; 2022 CBC 11B-502.3.3; 2022 CBC 11B 502.6; 28 C.F.R. §36.211(a); 2022 CBC 11B-108.

29.    There is no accessible route in front of the disabled parking spaces. The current clear width is only 23 inches. This means persons using a wheelchair are forced to travel behind parked cars.

30.    There is no sign in a conspicuous place at the entrance to the facility, or immediately adjacent to on-site accessible parking and visible from each parking space, stating that vehicles parked in designated accessible spaces not displaying a disabled placard or license plate will be towed. 2022 CBC 11B-502.8.

31.    Inside the hotel there are two Point of Sale (POS) devices for customers to use. However, the hotel does not provide an accessible POS device for customers in wheelchairs like Plaintiff. The POS devices were and are placed above and away from the edge of the inaccessible portions of the counters. The POS systems are fixed in place, rotate and tilt, at 53inches above the finished floor. This results in an obstructed high reach without clear floor space beneath equal to or more than the reach depth over the counter and/or a side reach containing an obstruction (the counter), the depth of which is more than ten inches. 2010 ADA §308.2.2; 2022 CBC 11B-308.2.2; 2010 ADA §308.3.1; 2022 CBC 11B-308.3.1; 2022 CBC 11B-707.

32.    Plaintiff wanted to pay using the point-of-sale device but it was completely out of reach. The employee stated he would do it for him, but Plaintiff did not want to hand his card over and have assistance paying his bill. Eventually he had to hand his card over to the employee, which was frustrating and embarrassing for Plaintiff.

33.    Defendants do have an accessible lowered counter off to the side of the main service counter. Unfortunately, this counter has no point-of-sale system available and there are no ISA's or directional signs to this alternate counter. 2010 ADA §216.1; 2010 ADA §703; 2022 CBC 11B- 216.1; 2022 CBC 11B- 703.

34.    The photos below show one or more of these violations.

/ /

/ /

/ /

/ /





















1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28






35.    The barriers existed during Plaintiff's visit to the Subject Property. Plaintiff personally encountered these barriers.

36.    These inaccessible conditions and barriers denied Plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment several times a day for the six days his relatives were visiting. Because of a lack of compliant parking in the garage Plaintiff was forced to park in the green zone and manage the obstructed route to and from the entrance to the hotel. Because of a lack of trained staff, he was forced to argue and assert his legal rights to refuse valet service and park his car in the green zone. Because of the lack of a compliant point-of-sale device, he had to suffer the embarrassment of needing assistance to pay his bill.

37.    These barriers denied Plaintiff full and equal access due to his disability because, *inter alia*, they caused Plaintiff anxiety, difficulty, discomfort, and embarrassment which patrons who do not use a wheelchair for mobility do not suffer when they access the Subject Property.

38.    Plaintiff has Article III standing because he is a regular customer of the hotel. He visited the subject property to pick up and drop off family members during their visit. The Subject Property is conveniently located and in the general area where he lives, shops, goes to medical appointments, visits family and friends, recreates, and does other normal activities in his daily life. Therefore, in addition to his concrete plan to return to the Subject Property to test for ADA and CBC compliance, Plaintiff also intends to return to the Subject Property in the near future, after the accessibility barriers alleged herein have been removed.

39.    Plaintiff alleges that Defendants knew that the barriers prevented equal access. Plaintiff further alleges that Defendants had actual or constructive knowledge that the architectural barriers prevented equal access, and that the noncompliance with the Americans with Disabilities Act and Title 24 of the California Building Code regarding accessible features was intentional.

40.     Defendants have obstructed or failed to maintain, in working and useable conditions, those features necessary to provide ready access to persons with disabilities. "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. §36.211(a); 2022 CBC 11B-108.

41.     The State of California Department of General Servicers, Division of the State Architect (DSA) provides commentary to 2022 CBC 11B-108 as follows:

> Features for accessibility must be permanently functional, unobstructed and may not be removed.  It is not sufficient to provide features such as accessible routes, parking, elevators, ramps or signage if those features are not maintained in a manner that enables individuals with disabilities to use them.

DSA, 2019 California Access Compliance Advisory Reference Manual, p.84.

42.     Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their property more accessible to their mobility impaired customers. The United States Department of Justice has identified that these types of barriers are readily achievable to remove.

43.     To date, Defendants refuse to remove these barriers, in violation of the law, willfully depriving disabled persons including Plaintiff of important civil rights.

44.     On information and belief, Plaintiff alleges that the Defendants' failure to remove these barriers was intentional because the barriers are logical and obvious. During all relevant times Defendants had authority, control, and dominion over these conditions and therefore the absence of accessible facilities was not a mishap, but rather an intentional act.

45.     The barriers to access are listed above without prejudice to Plaintiff citing additional barriers to equal access by an amended complaint after inspection by Plaintiff's Certified Access Specialist (CASp). *Oliver v. Ralphs Grocery Co.,*

1  654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir.

2  2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011).

3  All of these barriers to access render the premises inaccessible to physically

4  disabled persons who are mobility impaired, such as Plaintiff, are barriers Plaintiff

5  may encounter when he returns to the premises. All public accommodations must

6  be brought into compliance with all applicable federal and state accessibility

7  requirements.

## FIRST CAUSE OF ACTION

Violation of the Americans With Disabilities Act of 1990

(42 U.S.C. §12101, *et seq.*)

(Against All Defendants)

12  46.    Plaintiff alleges and incorporates by reference, as if fully set forth

13  again herein, each and every allegation contained in all prior paragraphs of this

14  complaint.

15  47.    More than thirty years ago, the 101st United States Congress found

16  that although "physical or mental disabilities in no way diminish a person's right to

17  fully participate in all aspects of society, yet many people with physical or mental

18  disabilities have been precluded from doing so because of discrimination…in such

19  critical areas as employment, housing, public accommodations, education,

20  transportation, communication, recreation, institutionalization, health services,

21  voting, and access to public services." 42 U.S.C. §12101(a).

22  48.    In 1990 Congress also found that "the Nation's proper goals regarding

23  individuals with disabilities are to assure equality of opportunity, full participation,

24  independent living, and economic self-sufficiency for such individuals," but that

25  "the continuing existence of unfair and unnecessary discrimination and prejudice

26  denies people with disabilities the opportunity to compete on an equal basis and to

27  pursue those opportunities for which our free society is justifiably famous." 42

28  U.S.C. §12101(a).

49.     In passing the Americans with Disabilities Act of 1990, which was signed into law by President George H. W. Bush on July 26, 1990 (hereinafter the "ADA"), Congress stated as its purpose:

"It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day to-day by people with disabilities."

42 USC §12101(b).

50.     As part of the ADA, Congress passed "Title III – Public Accommodations and Services Operated by Private Entities" (42 U.S.C. §12181 *et seq*.). Title III of the ADA prohibits discrimination against any person "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a).

51.     The specific prohibitions against discrimination include, *inter alia*, the following:

- 42 U.S.C. §12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with

the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

- 42 U.S.C. §12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

- 42 U.S.C. §12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

- 42 U.S.C. §12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

- 42 U.S.C. §12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

52.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

53.    The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

54.    The removal of each of the physical and policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of §12181 and §12182 of the ADA.  Removal of each and every one of the architectural and/or policy barriers complained of herein was already required under California law. Further, on information and belief,

alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per §12183 of the ADA. In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per §12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

55.     On information and belief, as of the date of Plaintiff's encounter at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other mobility disabled persons in other respects, which violate Plaintiff's right to full and equal access and which discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. §12182 and §12183 of the ADA.

56.     Defendants' actions continue to deny Plaintiff's rights to full and equal access and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of the ADA, 42 U.S.C. §12182.

57.     Further, each and every violation of the Americans With Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code §51(f), §52, §54(c) and §54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code §54.3 and §55.

/ /

/ /

/ /

/ /

## SECOND CAUSE OF ACTION

Violation of the Unruh Civil Rights Act

(California Civil Code §51, *et seq.*)

(Against All Defendants)

58.     Plaintiff alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

59.     California Civil Code §51 provides that physically disabled persons are free and equal citizens of the state, regardless of their medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, **disability, or medical condition** are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

California Civil Code §51(b) (emphasis added).

60.     California Civil Code §51.5 also states, in part: "No business, establishment of any kind whatsoever shall discriminate against…any person in this state on account" of their disability.

61.     California Civil Code §51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

62.     California Civil Code §52 provides that the discrimination by Defendants against Plaintiff on the basis of his disability constitutes a violation of the general antidiscrimination provisions of §51 and §52.

63.     Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code §52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum

of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

64.     Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code §51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code §52. Per Civil Code §51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

65.     The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code §51 and §52.

66.     The discriminatory denial of equal access to and use of the described public facilities caused Plaintiff difficulty, discomfort, and embarrassment.

67.     As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code §51 and §52, and are responsible for statutory, compensatory and actual damages to Plaintiff, according to proof.

## PRAYER FOR RELIEF

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief he requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California.

The need for relief is critical because the civil rights at issue are paramount under the laws of the United States of America and the State of California.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1.  Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the Subject Property and premises to modify the above described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities; and issue a preliminary and permanent injunction pursuant to ADA §12188(a) and state law directing Defendants to provide facilities and services usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies; and to train Defendants' employees and agents how to recognize disabled persons and accommodate their rights and needs;

2.  Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur;

3.  Award to Plaintiff all appropriate damages, including but not limited to actual and statutory damages according to proof;

4.  Award to Plaintiff all reasonable attorney fees, litigation expenses, and costs of this proceeding pursuant to 42 U.S.C §12205 and California Civil Code §52; and

5.  Grant such other and further relief as this Court may deem just and proper.

DATED: May 31, 2025                    **VALENTI LAW APC**

                                    By:   */s/ Matthew D. Valenti*
                                          Matthew D. Valenti
                                          Attorney for Plaintiff
                                          Ron Sarfaty

## JURY DEMAND

   Plaintiff hereby demands a trial by jury for all claims and issues for which a jury is permitted.

DATED: May 31, 2025                    **VALENTI LAW APC**

                                    By:   */s/ Matthew D. Valenti*
                                          Matthew D. Valenti
                                          Attorney for Plaintiff
                                          Ron Sarfaty